IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 06-068 |
| v. | ) | |
| | ) | |
| MICHAEL R. FLYNN, JR. | ) | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPRESS AND TO DISMISS

STATEMENT OF FACTS

We incorporate the facts as stated in our Motion to Suppress and to Dismiss and its accompanying exhibits.

**ARGUMENT**

I.  **Fruits Of The Search Of Mr. Flynn's Home Must Be Suppressed Because An Officer Could Not In Good Faith Believe That The Conley Affidavit Established Probable Cause To Search Mr. Flynn's Home On January 18, 2006.[1]**

   A.  The Affidavit Of Probable Cause Does Not Mention Mr. Flynn's Home, Much Less Establish Any Nexus Between It and Any Illegal Activity.

"The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to

---

[1] The agents obtained the federal search warrant entirely in reliance on observations they made while executing the Commonwealth search warrant at Mr. Flynn's home on January 18, 2006.  See Exhibit C at ¶¶ 2, 3.  The federal warrant lacks any independent source for its probable cause, and it rises or falls with the validity of the Commonwealth warrant, see Murray v. United States, 487 U.S. 533, 543-44 (1988); therefore, this brief focuses on the Commonwealth warrant and affidavit.

which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978). There must be "'a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Grubbs, 126 S. Ct. 1494, 1499 (2006)(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." United States v. Rowland, 145 F.3d 1194, 1204 (10th Cir. 1998).

While this Court's review is limited to examining the search warrant affidavit in a "commonsense manner" to determine whether the issuing judge had a substantial basis for concluding that probable cause existed, see Gates, 462 U.S. at 236, 238, this "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions," United States v. Zimmerman, 277 F.3d, 426, 433 (3d Cir. 2002).

The affidavit here did not allege any evidence to link Mr. Flynn's home to any crime. To the contrary, the affidavit suggests that if Mr. Flynn had any gambling records, they would be kept at his business, The Union Grill at 13 East Wheeling Street, Washington, PA 15401. Page 35 of the affidavit states, "During the previous investigation of Michael Flynn [in 2001] records of his illegal gambling operation were found in the office of the Union Grill, Washington, PA." See also p. 37 (describing previous investigation).

The affidavit here is even weaker than that in United States v. Loy, 191 F.3d 360 (3d Cir. 1999), a child pornography case in which the Court of

2

Appeals held that there was no probable cause to believe that pornography the defendant was receiving through the mails would be viewed and stored at his home.  The affidavit in Loy described an undercover investigation during which Loy boasted that he and his wife had "a good collection" of child pornography.  191 F.3d at 362.  However, he requested that child pornography he ordered from the undercover officers be shipped to a post office box, and he told the undercover officers that he kept only legal material at home.

The officers obtained an anticipatory search warrant to search Loy's home and computer if he took the material from his post office box and brought it home, which he did.  The affidavit in Loy included a statement from a Postal Inspector experienced in child pornography investigations "that based on his experience, those who collect pornographic materials involving minors 'commonly . . . maintain this material in the privacy of their homes.'"  191 F.3d at 366.

The Court of Appeals ruled that the warrant failed to establish a sufficient nexus between Loy's home and contraband.  The Court found that the affidavit lacked any evidence that Loy would view the contraband video at home as opposed to somewhere else, especially in light of his statements that he kept only legal pornography at home. Regarding the Inspector's professional opinion, "Inspector Clinton's conclusory statement that people who collect child pornography commonly keep it in their homes is insufficient, in light of Loy's own assertion that he kept it in a storage facility, to provide the requisite nexus between the contraband and Loy's residence." Id. at 366-67.  See also

Zimmerman, 277 F.3d at 433 n.4 (criticizing reliance on boilerplate recitations that evidence of a particular type of crime typically is kept at home).

Likewise, the affidavit here points away from Mr. Flynn's home and toward another location for the storage of gambling records and proceeds: Mr. Flynn's business, the Union Grill. The affidavit notes that in the 2001 investigation, officers found gambling records in the Union Grill (and nowhere else). Aff., p.37. During this investigation, officers observed Mr. Flynn meeting with Mr. Conley at Citadel Financial and the Union Grill (but not at Mr. Flynn's home). Id. at p. 39.

The affidavit states that Mr. Flynn resides at 689 Beau Street, page 36, but says nothing else about that address. The affidavit mentions that Mr. Flynn was burglarized and at least $160,000 stolen from him in 2001, but the affidavit does not state where that burglary took place. Exhibit A, page 37. The affidavit does not say where the burglary occurred, so it does not provide evidence to believe that once upon a time, Mr. Flynn stored cash at his home. The Court's review must be limited to that which the affidavit states, not any extraneous information. See United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). In any event, the information, being five years old, would be stale, and having been victimized once, Mr. Flynn would have been unlikely to continue to store cash at his home, or so a reasonable person would think.

The affidavit says nothing about Mr. Flynn gambling from his home, using computers to gamble, or receiving or making payoffs from his home. In fact, the affidavit does not even allege that Mr. Flynn owns a computer.

4

The sole link to anyone's home[2] in the affidavit is the affiants' assertion, "In the experience and training of your affiants individuals often keep records related to their personal finances at their homes, including their bank statements, tax returns, statements of investments, records of substantial purchases, and other financial records." Affidavit, at p.35. True and banal as this may be, it says nothing about the evidence showing that this person, Michael Flynn, kept not mundane financial records, but records of illegal gambling activity at <u>his</u> home. To the contrary, the very next sentence undercuts any finding of probable cause relative to Mr. Flynn's home: "During the previous investigation of Michael Flynn records of his illegal gambling operation were found *in the office of the Union Grill,* Washington, PA." <u>Id</u>. (emphasis added) "It is well-established that an expert opinion must be tailored to the specific facts of the case to have any value. . . . Rambling boilerplate recitations designed to meet all law enforcement needs" do not produce probable cause." <u>Zimmerman</u>, 277 F.3d at 433 n.4.

In numerous cases, the Court of Appeals has held that the evidence tying the crime to a person's home can be circumstantial, but still there must be evidence there must be. <u>See</u> <u>United States v. Burton</u>, 288 F.3d 91, 103 (3d Cir. 2002) "[P]robable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." <u>United States v. Conley</u>, 4 F.3d 1200, 1207 (3d Cir. 1993). In each

---

[2] The same affidavit was used to support the searches of Mr. Conley's home and several others.

5

of these cases, however, there was evidence, albeit circumstantial, to tie the crime to the target's home.  In both Burton, and United States v. Whitner, 219 F.3d, 289 (3d Cir. 2000), the defendants attempted to deceive officers about their true addresses, "thereby supporting the inference that contraband was hidden there."  Burton, 288 F.3d at 105;   see Whitner, 219 F.3d at 298-99. See also Conley, 4 F.3d at 1206-07 (permits for video poker machines that made illegal payoffs listed Duffy Vending Co. as owner, and permit applications gave address to be searched as address of Duffy Vending Co.; a license plate of a truck appearing to transport a load of video devices also was traced to that address.); United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993) (permits same inferences from circumstantial evidence as does Third Circuit in drug cases, but finds no probable cause: "In this and other circuits, residential searches have been upheld only where some information links the criminal activity to the defendant's residence.  . . . Where no evidence connects the drug activity to the residence, the courts have found the warrant defective.")

  The Court of Appeals has been especially forgiving where the search is of the home of a large-scale drug trafficker, reasoning that the dealers likely will keep the contraband drugs in their home.  E.g., Whitner, 219 F. 3d at 297. This is not a drug case.  Bookmakers, if Mr. Flynn be one, trade in information, not a bulky product in need of storage space, such as cocaine, heroin or marijuana.

  Further, the information in this affidavit suggesting that Mr. Flynn was a bookmaker at the time of the search rather than a gambler is weak.  The

6

affidavit notes that Mr. Flynn was convicted for bookmaking activity that occurred in 2001. Affidavit at p.37. After the search, Mr. Flynn "along with others" discussed setting up online internet gambling accounts so gamblers could place bets over the internet, although the settling of accounts would take place locally, not over the internet. The affidavit asserts that Mr. Flynn's son seems to "participate" in a Costa Rican online gambling site. (Gambling and bookmaking are legal in Costa Rica. See United States v. $734,578.82 In United States Currency, 286 F.3d 641, 650 (3d Cir. 2002)(noting that under conflicts of laws principles, "a gambling transaction occurs in the country where the bet or wager is accepted".) However, the affidavit does not suggest that Mr. Flynn followed through on his 2001 suggestion.

    The affidavit mentions that one Edward McCoy suggested online gambling to Trooper Cornetta. Id. at p. 38. However, neither Mr. McCoy nor Trooper Cornetta had any discussions with Mr. Flynn about the idea, at least according to the affidavit. Id. at pp.38-39.

    The affidavit quotes and describes several conversations between Mr. Flynn and Duffy Conley. Some apparently involve Mr. Flynn – who supposedly had connections with gambling sites – asking Mr. Conley's assistance to set up accounts with Pinnacle, an offshore wager site, for Mr. Flynn and two other persons. Id. at 39-41. The entirety of this description makes Mr. Flynn sound like a gambler, perhaps one who conveys others' requests to obtain accounts, but not a bookmaker. See United States v. Alston, 01-CR-321, 2006 WL 297765 (M.D.Pa. Feb. 8, 2006) (where evidence showing that defendant was a

7

drug-dealer was weak, so too was inference that he would keep drugs and records of its trafficking in his home; suppressing evidence seized pursuant to a warrant).  Thus, the argument that Mr. Flynn would have bookmaking records at his home lacks any support in the affidavit.

> B. The Affidavit So Lacks In Probable Cause To Believe Evidence Will Be Found In Mr. Flynn's Home That Reliance On It Was Not Reasonable Or In Good Faith.

The good faith exception to the warrant requirement does not apply, inter alia, "[w]here the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . ."  Zimmerman, 277 F.3d at 437 (finding no good faith).

Here, as in Zimmerman, the affidavit was so lacking in any probable cause nexus to Mr. Flynn's home that "it was entirely unreasonable for an official to believe to the contrary."  Id.  The affidavit says nothing about Mr. Flynn's home but to state that he resides there.  It does not allege that any illegal activity occurred in Mr. Flynn's home nor that evidence of illegal activity likely will be found there.  To the contrary, the affidavit, as described above, strongly points toward his restaurant as the only possible locale where evidence of illegal gambling is likely to be found.

Reliance on this affidavit was even more unreasonable than in Loy (where the Court of Appeals found no probable cause, but good faith) or Zimmerman (where the Court of Appeals found neither), both child pornography cases. Perusing pornography and the autoeroticism that accompanies it are not likely to take place anywhere other than the target's home, and in both Loy and

8

Zimmerman the government added to its affidavit allegations, albeit boilerplate, to that effect. In contrast, people gamble at work, in parks, at sports venues, in restaurants and bars and on the streets and sidewalks, as the affidavit itself demonstrates. Duffy Conley took and placed many of his bets at the office of a mortgage brokerage, Citadel Financial. Here, the affiants, despite their impressive experience investigating illegal gambling, say nothing about the likelihood that gamblers and bookmakers will store gambling records and proceeds at their homes, and, more importantly, nothing, either based on the facts of this investigation or their experience to indicate that Mr. Flynn conducted illegal activity or kept evidence of it at his home. Where there is <u>no evidence</u> of a nexus to the searched home, and in fact, evidence pointing elsewhere (to Mr. Flynn's restaurant), "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." <u>Loy</u>, 191 F.2d at 367. <u>See</u> also <u>Alston</u>, 2006 WL 297765.

      C.    Mr. Flynn's Statements Must be Suppressed As Fruits of the <u>Illegal Search</u>.

Mr. Flynn's statements about the guns resulted from the illegal search of his home; therefore, they must be suppressed as the fruit of that illegality. <u>See United States v. Nafgazer</u>, 965 F.2d 213, 217 (7th Cir. 1992)(defendant's statements that truck was stolen triggered by agents' finding the truck during illegal search of shed); <u>United States v. Marrese</u>, 336 F.2d 501, 504 (3d Cir. 1964)(illegal search of room yield shotgun, which defendant then admitted owning; statements suppressed).

9

### II. Mr. Flynn's Statements Also Were Elicited in Violation of His Fifth Amendment Right to Counsel.

Mr. Flynn, while in custody, invoked his right to counsel and informed the agents that he was represented by counsel. See Exhibit E. The agents questioned him and elicited his statements in violation of Edwards v. Arizona, 451 U.S. 477 (1981); see also McNeil v. Wisconsin, 501 U.S. 171, 176-77 (1991). For this reason, too, his statements must be suppressed.

### III. Criminalizing Gun Possession By Those, Like Mr. Flynn, Convicted Of The Nonviolent State Misdemeanor Of Bookmaking, While Exempting Those Convicted Of Business Crimes Violates The Fifth Amendment's Due Process Clause And The Second Amendment.

Mr. Flynn is being prosecuted on the basis of his prior conviction for bookmaking, a first degree misdemeanor under Pennsylvania law, see 18 Pa.C.S.A. § 5514, but a felony for purposes of the federal gun laws, see 18 U.S.C. § 921(a)(20). The felon in possession statute exempts from its prohibition those convicted of "[a]ny Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." 18 U.S.C. § 921(a)(20)(A). The selective exemption of some felonies from § 922(g) violates the equal protection component of the Due Process clause of the Fifth Amendment and the Second Amendment right to bear arms; thus, the indictment containing the § 922(g) charge against Mr. Flynn should be dismissed.

Congress enacted § 922(g) in an effort to keep firearms out of the hands of convicted individuals whose prior conduct indicated a

heightened proclivity for using firearms to threaten community peace and the "continued and effective operation of the Government of the United States." United States v. Lewis, 445 U.S. 55, 66 (1980).  By definition, non-violent felons do not exhibit dangerous tendencies. Section 921(a)(20)(A) reduces the unnecessary restrictions on non-violent felons.  Mr. Flynn is a non-violent felon convicted for bookmaking activity in violation of 18 Pa. C.S.A. § 5514 that occurred in 2001.

In United States v. Jester, 139 F. 3d 1168 (7th Cir. 1998), the Seventh Circuit, using a rational basis test, found that there was a rational basis for exempting felons convicted of offenses set forth in 18 U.S.C. § 921(a)(20) from the prohibitions contained in § 922(g) because the right to possess a firearm is not a fundamental right under the Second Amendment, and felons are not a protected class.  See also Gillespie v. City of Indianapolis, 185 F.3d 693, 710 (7th Cir. 1999)("the Second Amendment established no right to possess a firearm apart from the role possession of the gun might play in maintaining a state militia.") The Court also noted that Jester, who had been convicted of armed robbery, also lacked standing to challenge the selectivity of the exemption for nonviolent offenses.  139 F.3d at 1172.

In United States v. Emerson, 270 F.3d 203 (5th Cir 2001), Emerson challenged 18 U.S.C. § 922(g)(8)(C)(ii) as violative of the Second and Fifth Amendments to the United States Constitution.  The Fifth Circuit, after engaging in a thorough historical analysis of the Second Amendment and

11

precedent throughout the nation, held that the right to keep and bear arms is not a collective right held by the states and adjunct to a militia, but a personal right. Id at 260. The Court did rule, however, that Section 922(g)(8), which prohibits those under domestic abuse restraining orders from possessing firearms, does not violate the Second Amendment because it is drawn to restrict firearm possession by those individuals found to present some threat of violence. Id. at 260-65.[3]

As recently as August 2004, in a Memorandum Opinion for the Attorney General, the Department of Justice took the position that the Second Amendment secures a personal right of individuals, not a collective right that may only be invoked by a State or a quasi-collective right restricted to those persons who serve in organized militia units. Memorandum Opinion for the Attorney General on Whether the Second Amendment Secures an Individual Right (Aug. 24, 2004) at www.usdoj.gov/olc/secondamendment2.htm [4]

Because the Second Amendment creates a fundamental right for individuals to keep and bear arms, the rational basis test applied in equal protection cases not involving either a fundamental right or a suspect class and utilized in Jester must be discarded in favor of a strict scrutiny analysis. The equal protections principles implicit Due Process

---

[3]   The Court also noted its belief that the felon in possession statute likewise is constitutional. Id. at 261. However, the Emerson court did not discuss the issue of the Section 921(a)(20)(A) exemption and its failure to include other nonviolent offenses.
[4]   We acknowledge that our Court of Appeals appears to reject both the Fifth Circuit's and the Department of Justice's position that the Second Amendment confers an individual right to bear arms. See United States v. Rybar, 103 F.3d 273, 286 (3d Cir. 1996).

Clause of the Fifth Amendment requires those similarly situated to be treated equally by the federal government.  See Buckley v. Valeo, 424 U.S. 1, 93 (1976); Bolling v. Sharpe, 347 U.S. 497, 499, 74 S. Ct. 693 (1954).  Legislation which restricts exercise of a fundamental right must pass muster under the strict scrutiny test.  See Lutz v. York, 899 F.2d 255, 265-66 (3d Cir. 1990).  Under this analysis, the challenged distinction must be narrowly tailored to serve a compelling governmental interest in order to pass constitutional muster.  See Austin v. Michigan Chamber of Commerce, 494 U.S. 652, 666, 110 S. Ct. 1391 (1990).  Accordingly, the government must demonstrate that the challenged law or government action "serves a compelling state interest and that the state's objective could not be achieved by a measure less restrictive of the plaintiff's fundamental right." Sammon v. N.J. Bd. of Med. Exam'rs, 66 F.3d 639, 645 n.9 (3d Cir. 1995).

     Here, the distinction between bookmaking and offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices listed in 18 U.S.C. § 921(a)(20)(A) cannot withstand strict scrutiny review.  There is no rational justification, much less a compelling justification, which would withstand strict scrutiny review for exempting from the federal firearms laws business crimes and not bookmaking.  Exempting business related offenses from § 922(g) but not other nonviolent offenses such as bookmaking does not pass the strict scrutiny test and

13

impermissibly infringes on the constitutional right to bear arms; therefore, the indictment should be dismissed.

## CONCLUSION

For the reasons stated above and in the defendant's motion to suppress and to dismiss, the Court should suppress the guns seized from defendant's home and the statements the defendant made that day (or hold an evidentiary hearing on those issues) and dismiss the indictment.

Respectfully submitted,

*/s/ Thomas J. Farrell*
Thomas J. Farrell, Esquire
Attorney for Defendant
Michael Flynn
PA ID No.  48976
1000 Koppers Building
Pittsburgh, PA  15219-1827