IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 06-068** |
| | ) | **ELECTRONICALLY FILED** |
| MICHAEL R. FLYNN, JR. | ) | |

**Findings of Fact and Conclusions of Law**

**September 27, 2006**

**Introduction**

Before the Court is defendant Michael R. Flynn, Jr.'s Motion to Suppress Physical Evidence and Statements and to Dismiss the Indictment. (Document No. 33). The motion to suppress essentially comes down to a "four corners" analysis of the affidavit supporting the challenged search warrant application. There is little or no dispute of fact. After careful consideration of the motion and memorandum of law in support, the government's response and memorandum of law in opposition, and after an evidentiary hearing conducted on September 8, 2006, the Court will deny the motion on all grounds.

**Findings of Fact**

1. Defendant is charged in the indictment herein with one count of being a convicted felon in possession of six firearms and ammunition, in violation of 18 U.S.C. §922(g)(1).

2. On January 19, 2006, a federal search warrant was executed by FBI Special Agent Patrick Howley and other FBI Special Agents at defendant's residence in Washington, Pennsylvania, which warrant authorized the search for and seizure of four handguns, a semi-

automatic assault rifle and a shotgun, and defendant's United States Passport.

3. When handed the receipt for the seized items, defendant stated, according to Special Agent Howley's report, "that the Savage 12 gauge shotgun was an old hunting weapon that he owned since he was a teenager," and that one of the handguns (a .22 caliber H&R Model 622) was owned by Ms. Anne Belcastro, who was present at the time. When Ms. Belcastro heard this, Ms. Belcastro said "It is?" FBI Form FD-302 dated January 9, 2006, Motion to Suppress, Exhibit D.

4. On January 18, 2006, Mr. Flynn's residence and his business, the Union Grill, in Washington Pennsylvania were searched by Pennsylvania State Police Officers, agents with the Pennsylvania Attorney General's Office, and FBI agents pursuant to a search warrant issued by a Judge of the Court of Common Pleas of Washington County (the "state warrant").

5. The state warrant arose from an almost one year gambling investigation by the Pennsylvania State Police Department and the Pennsylvania Attorney General's Office of John "Duffy" Conley, whose residence and offices also were searched on January 18, 2006. The applications for the Flynn and Conley state warrants were supported by the 69 page affidavit of Pennsylvania State Trooper Anthony Cornetta and Attorney General's Office Special Agent Paul Marraway, both of whom had extensive law enforcement experience, including investigation of organized crime, illegal gambling, money laundering and other investigations. Motion to Suppress, Exhibit A, Application for Search Warrant and Authorization, with Affidavit in Support of Application for Search.

5. The state warrants indicated that Mr. Conley and numerous other persons, including defendant, were under investigation and surveillance for violations of the Pennsylvania organized crime, illegal gambling, money laundering and conspiracy statutes, 18

Pa.C.S. §§ 903, 911, 5511 and 5514. *Id*.

    6.    The Items to Be Searched for and Seized were listed as, inter alia, records, numbers, betting slips, electronic equipment such as computers and pagers, currency, coins and financial instruments, including stocks and bonds, address books, indicia of residency and ownership, books, papers and records of any business enterprise, and "7. Financial records including but not limited to bank statements, wire transfers, tax returns, checks, statements of investments, and records of substantial purchases." Motion to Suppress, Exhibit A, Application for Search Warrant at 1-3.

    6.    The items seized from defendant's residence pursuant to the state warrant included over $300,000 in currency and coins found in various amounts in numerous locations throughout the residence, jewelry, computer equipment, and personal financial documents and records. Motion to Suppress, Exhibit B,

    7.    The officers and agents executing the January 18th state warrant observed, in plain view, the firearms and ammunition that became the objects of the January 19th federal warrant and seizure.  It was these plain view observations that supplied the probable cause for the federal warrant.

    8.    The affidavit of probable cause to support the state warrant contains detailed assertions, from personal observations and electronic surveillance, to show that (i) defendant and Conley were engaged, along with many others, in an illegal gambling business, and it listed numerous contacts between the two men at one or the other's place of business; (ii) defendant had a previous state gambling related conviction, and that $160,000 in cash had been stolen from him in 2001; (iii) Conley actually placed numerous cell phone calls from his residence, especially on weekends; (iv) during a previous investigation of Mr. Flynn, records of illegal gambling

operations were found at the Union Grill; (v) based upon the experiences of both Agent Marraway and Trooper Cornetta, "individuals often keep records related to their personal finances at their homes, including their bank statements, tax returns, statements of investments, records of substantial purchases, and other financial records;" and (vi) "it is common for illegal bookmakers" to accumulate large amounts of currency, financial instruments, jewelry, and other assets or indicia of assets, and "to secrete contraband, proceeds of illegal bookmaking and records of such in secure locations within their residences, their businesses, storage lockers, and or other locations over which they maintain dominion and control for their ready access and to conceal these items from law enforcement authorities." Motion to Suppress, Exhibit A at 12-16, 35 (Doc. 33 at 15-19, 38).

9. Defendant does not dispute that the affidavit in support of the state warrant sets forth adequate probable cause that he was participating in unlawful criminal activities, including illegal gambling, the "plain view" of the firearms that supported the federal warrant obtained and executed the next day, nor does he challenge the search of his business, the Union Grill. Defendant challenges the items seized pursuant to the federal warrant, and his statements to Special Agent Howley, only as the fruits of an unlawful prior search of his residence pursuant to an invalid state warrant, invalid because, defendant asserts, it lacked probable cause of the requisite nexus between the criminal activities alleged and the items to be searched for and seized as fruits or evidence of those activities, and the place to be searched, his residence.

**Standards Governing Motion to Suppress - Probable Cause Determination**

In order to determine whether the search warrants were valid, the Court must first ascertain whether the probable cause asserted in the affidavits was adequate. "Probable cause for

searching a particular place exists in an affidavit when the affidavit sets forth facts constituting a substantial basis for finding a fair probability that first, a crime has been committed, and second, the particular place may contain the fruits, instrumentalities or evidence of the crime committed." *United States v. Conley*, 4 F.3d 1200, 1204-05 (3d Cir.1993), citing *Illinois v. Gates*, 462 U.S. 213, 236, 238-39 (1983) (other citations omitted).  The Court need not determine whether probable cause actually existed, but rather, whether the issuing authority had a "substantial basis" for finding probable cause.  *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citations omitted).

A district court must give great deference to the issuing authority's probable cause determination. *See United States v. Loy*, 191 F.3d 360, 365 (3d Cir.1999).  A "grudging or negative attitude by reviewing courts towards warrants" is inconsistent with the strong preference embodied in the Fourth Amendment that encourages searches conducted pursuant to a warrant issued by a neutral and detached magistrate.  *United States v. Jones*, 994 F.2d 1051, 1057 (3d Cir. 1993), quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

In *Illinois v. Gates,* the United States Supreme Court instructed judicial officers reviewing an application for a search warrant to analyze the facts set forth in the affidavit of probable cause in light of the "totality of the circumstances," to determine whether probable cause to issue a warrant exists.  The Court stated as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238.

This Court, in reviewing the determination of probable cause made initially by the issuing

authority, here a Judge of the Court of Common Pleas of Washington County, is required to afford "great deference" to the Judge's determination, and should not interpret the affidavits in a hyper-technical manner, but rather, should review the affidavits in a "commonsense manner" to determine whether the Judge had a substantial basis for concluding that probable cause existed. *Id.* at 236, 238.  The Court must, therefore, confine itself to the facts that were before the Judge. In other words, the Court must confine itself only to the application and supporting affidavit and cannot consider extraneous information.  *Hodge*, 246 F.3d at 305.  In resolving questionable cases, the preference for the warrant process, and deference to the Judge's probable cause determination, should prevail.  *Jones*, 994 F.2d 1055.  *Gates*, 462 U.S. at 236-237.

Moreover, although the affidavit must set forth the nexus between the items to be sought and seized and the place to be searched, direct evidence linking the place to be searched with a crime is not required for a warrant to issue.  *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993); *Jones*, 994 F.2d at 1056.  Probable cause is commonly and often inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide" the fruits of his crime.  *Hodge*, 246 F.3d 305; *Jones*, 994 F.2d 1051.  A reviewing court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Hughes*, 246 F.3d at 305-06, citing *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir.2000).

It is also appropriate for the issuing authority, and the reviewing court, to consider the experience of law enforcement personnel who attest in affidavits that, given the type of crime being investigated, the nature of the items sought, the suspect's opportunity for concealment and the normal inferences about where one would normally be expected to conceal the fruits and evidence of the crime being investigated, the items sought are likely to be found in the place to

be searched. *Compare Hodge*, 246 F.3d at 306-07 and *Whitner*, 219 F.3d (reasonable to infer that persons suspected of large scale drug dealing would store evidence of that dealing in their residences; numerous cases collected), *with Loy*, 191 F.3d 366 (Postal Inspector's statement contained in affidavit that, based on his experience, those who collect pornographic materials involving minors "commonly . . . maintain this material in the privacy of their homes," without more, does not supply requisite nexus where this profile was directly contradicted by suspect's statement to an undercover agent that he only kept "stuff that's legal" at his residence) *and United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) (same).

### Conclusions of Law

1.	This Court finds that the issuing Judge had a "substantial basis" for finding probable cause that a crime had been committed and that the items to be searched for and seized would be evidence of fruits of that crime and would be found at defendant's residence as well as his business.

The affidavits supporting the state warrants were detailed, based on lengthy investigations and surveillance, and were supported by the collective training and experience of the affiants, the type of the crimes being investigated (i.e., organized crime, illegal gambling and money laundering, and conspiracy), the nature of the items sought and the likelihood that such items would be found at the suspect's residences, in addition to their places of business, and the opportunity for concealment and normal inferences about where person's involved in such activities would hide their assets and records. Moreover, because defendant's business, the Union Grill, had been searched previously and evidence of an illegal gambling operation had been seized therefrom, it would be more likely to believe he would not keep currency and coins,

financial instruments and records of personal finances at the Union Grill.

2. In the experience of both of the affiants, the items searched for in this investigation of these particular crimes are normally kept at the residences of bookmakers and operators of illegal gambling businesses, in addition to other locations they control, as was set forth in their affidavit of probable cause. In addition to the other details of the affidavit, this situation (i.e., type of crime, the nature of the items sought, suspect's opportunity for concealment and normal inferences about where such a criminal might hide evidence and fruits of such crimes) is much closer to the drug distribution cases, *see Hodge and Whitner*, than to that of possessors of child pornography, *see Loy and Zimmerman*.

3. Even if the affidavits were deemed inadequate, *arguendo*, to supply the requisite nexus, there is no doubt that the executing officers had reasonable basis to believe that the state warrant was supported by probable cause of both the criminal activity and the nexus to the place to be searched, and conducted the search in good faith. Accordingly, the evidence obtained from defendant's residence would be admissible under the good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984); *Loy*, 191 F.3d at 367, quoting *Leon*, 468 U.S. at 922 n. 23.

For all of the foregoing reasons, the Motion to Suppress will be denied.[1]

---

[1] In his Motion to Suppress and Memorandum of Law in support, defendant claimed that his statements also should be suppressed because he invoked his right to counsel and the agents did not honor that right. At the suppression hearing, however, Special Agent Howley testified that defendant was not in custody, and that his statements were volunteered when he handed defendant the inventory, and there was no evidence offered to the contrary. Accordingly, this issue is without merit.

**Motion to Dismiss**

Defendant also asserts that the indictment should be dismissed because criminalizing gun possession by persons previously convicted of bookmaking while exempting those persons convicted of certain business crimes is an unconstitutional denial of substantive due process and the Second Amendment right to bear arms.  There is no authority to directly support this proposition, and this Court will not be the first.  *See United States v. Rybar*, 103 F.3d 273 (3d Cir. 1996) (rejecting second amendment challenge to 18 U.S.C. § 922(o), and noting that federal attempts at firearms regulation have consistently withstood challenge under the Second Amendment; collecting cases).  The Motion to Dismiss will therefore be denied.

        s/ Arthur J. Schwab
        Arthur J. Schwab
        United States District Judge

cc:	All counsel of record as listed below

Brendan T. Conway, Esquire
Thomas J. Farrell, Esquire

United States Marshal Office
United States Probation Office